**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**IN RE: EVCON RENTALS, CORPORATION, DEBTOR**

**CASE NO.: 6:26-bk-70738**
**CHAPTER 11**
**SUBCHAPTER V**

# MEMORANDUM OPINION

Before the court is *Sodco, Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense for Unpaid Post-Petition Rent and Use and Occupancy* ("Motion") filed by Sodco, Inc. ("Sodco") on July 27, 2026, at docket entry 85. Evcon Rentals, Corporation, the debtor ("debtor"), did not file an immediate response. The court set solely the Motion for hearing on September 10, 2026. Prior to the hearing, Sodco and the debtor advised that the operative facts were undisputed, and they wished to submit briefs.

Accordingly, Sodco filed its *Brief in Support of Sodco, Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense for Unpaid Post-Petition Rent* ("Brief") on September 21, 2026, at docket entry 168. The debtor filed its *Debtor's Response to Sodco, Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense (ECF No. 85) and Brief in Support (ECF No. 168)* ("Response") on October 14, 2026, at docket entry 182. Thereafter, the court took the matter under advisement. For the reasons stated herein, the Motion is granted in part and denied in part. The sum of $20,200 is an administrative expense owed Sodco that the debtor shall pay in the ordinary course of its Chapter 11 reorganization and plan. The court shall enter a separate judgment to this effect.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The following opinion constitutes findings of

fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 9014 and 7052.

## II. Facts

The Brief and Response outline the following facts:

1. Sodco owns the nonresidential real property at 101 Airway Drive, Hot Springs, Arkansas 71913. Before the petition date, Sodco leased the Property to the Debtor under a written Lease Agreement dated May 15, 2023 (the "Lease").

2. Contract rent was $10,100.00 per month.

3. The Debtor commenced this Chapter 11, Subchapter V case on April 17, 2026.

4. It remained in possession and continued operating its equipment-rental business from the Property after the petition date until July 24, 2026.

5. That occupancy allowed the Debtor to keep operating its business from the Property.

6. During the case, the Debtor issued and delivered two rent checks to Sodco: Check No. 3454, dated May 13, 2026, for $10,100.00, noted "May 2026/101 Airway Dr."; and Check No. 3495, dated June 15, 2026, for $10,100.00, noted "Lease 101 Airway Dr.," for June rent.

7. Both checks were issued from the Debtor-In-Possession bank account.

8. Sodco did not negotiate the checks immediately, to avoid any argument that doing so waived its non-renewal position or consented to continued possession while the parties litigated whether the Lease had expired.

9. Sodco did not reject the payments, return the checks, forgive the rent, or agree the checks would not be presented.

10. On July 16, 2026, the Court entered the parties' Agreed Order (ECF No. 79) resolving Sodco's Motion for Relief from Stay and for Abandonment. The Agreed Order terminated the stay as to the Property and Lease, required the Debtor to surrender possession by July 24, 2026, and deemed the estate's interest in the Lease and Property abandoned.

11. The Agreed Order further required the Debtor to pay $3,258.06 in prorated rent for July 15–24, 2026, "on or before July 24, 2026," calculated at the $10,100.00 monthly rate.

> 12. It expressly preserved Sodco's right to prosecute a claim for all amounts owed under the Lease and applicable law, including, without limitation, unpaid and prorated rent, contractual late charges, attorneys' fees and costs, and any other charges recoverable under the Lease.
>
> 13. After the Agreed Order resolved the possession dispute, Sodco promptly presented the May and June checks for deposit. Both were dishonored because the Debtor had placed stop-payment orders on them.
>
> 14. Michael Evans, the principal of the Debtor, admitted at the July 30, 2026 Meeting of Creditors that:
>
> a. he directed the stop payment orders on the Check;
> b. the funds from the two dishonored checks were subsequently used to rent a new place of operations for the Debtor;
> c. he did not seek approval from the Court prior to placing the stop payment orders; and
> d. he did not notify Sodco of the stop-payment orders[.]
>
> 15. Sodco did not receive the $20,200.00 those checks represented, and the Debtor also failed to timely pay the $3,258.06 due under the Agreed Order.
>
> 16. After being reminded of [ ] its obligation to pay the $3,258.06, Debtor made that payment to Sodco after the agreed upon deadline.
>
> 17. The $20,200.00 in May and June rent remains unpaid.
>
> 18. Debtor previously filed a Chapter 11 Bankruptcy, [ ] Case No. 6:25-bk-70643, on April 16, 2025. After twelve (12) months with no plan being confirmed, the prior case was dismissed on the Motion of the Trustee.
>
> 19. The Debtor's Plan of Reorganization (Aug. 4, 2026) rejects the Sodco premises lease but does not specify the amount, source, or timing of payment of Sodco's administrative claim; Sodco has objected to confirmation on that ground.
>
> 20. This is a core proceeding concerning the allowance and payment of administrative expenses of the estate under 11 U.S.C. § 503. The Court also expressly retained jurisdiction to interpret, implement, and enforce the Agreed Order, including its prorated-rent and claim-reservation provisions.

(Br., Sept. 21, 2026, ECF No. 168, at 2-5.)

The debtor does not dispute Sodco's statement of facts but amplifies them by argument and explanation as follows:

> 10. The question is liquidity, not solvency. Sodco relies on the Debtor's Schedules, which reflect roughly $3.11 million in assets against roughly $1.79 million in liabilities. Brief at 10. Those assets consist principally of the Debtor's rental equipment and not cash. The Debtor's most recent Monthly Operating Report, for August 2026, reports cash on hand of $20,770.07 at month end. ECF No. 176 at 2. Sodco's demand for $20,200.00 within five business days equals approximately 97% of that figure.
>
> 11. Immediate payment would prejudice the Debtor and its other creditors, while payment through the Plan would not prejudice Sodco. In August the Debtor received $50,329.12 and disbursed $69,905.64. ECF No. 176 at 2. Those disbursements were the ordinary costs of keeping the business running: payroll and payroll taxes for five employees, sales taxes remitted to the Arkansas Department of Finance and Administration, insurance premiums, and equipment financing payments. *Id.* at 6-11. August receipts also fell short of the Debtor's projections, reflecting the disruption of relocating its operations out of the Property at the end of July. Requiring payment of Sodco's claim on five days' notice would strip the Debtor of the working capital it needs to meet payroll and tax obligations, and would jeopardize the very operations that will fund payment of all administrative claims, Sodco's included. It would also prefer Sodco over administrative claimants of equal rank, contrary to the equal treatment of administrative claimants that Sodco itself acknowledges. Brief at 10. On the other side of the ledger, payment through the Plan costs Sodco very little. Sodco regained possession of its building on July 24, 2026, and has been free since then to relet it and collect rent from a new tenant. Its claim against the estate is fixed at $20,200.00 and will not grow. That claim keeps its administrative priority, any plan must provide for its payment in full, and Sodco's pending objection to confirmation preserves its right to contest any treatment it considers inadequate. Thus, Sodco would not suffer any ongoing prejudice because it has the property back to relet and therefore should be paid over the life of the plan.

(Resp., Oct. 14, 2026, ECF No. 182, at 4-5.) (emphasis omitted)

## III. Relief Requested

Sodco seeks allowance of an administrative expense under section 503(b)(1)(A) in the amount of $20,200. The debtor agrees. The sole dispute is timing. Sodco asks for immediate payment within five days or preferential treatment, including segregation; the debtor argues Sodco is entitled only to priority under 11 U.S.C. § 507(a)(2) payable in the ordinary course, presumably through a plan of reorganization, an uncertainty Sodco considers unpalatable.

## IV. Analysis

As the parties agree that Sodco has an administrative claim, little remains. Most of the cases Sodco cites focus on section 503 concerning administrative status, an issue now resolved.[1] Regardless, the cases cited by the parties do provide guidance concerning timing. As Sodco argues:

> The timing of payment of an allowed administrative expense "is within the discretion of the bankruptcy court." *In re Midway Airlines Corp*., 406 F.3d 229, 242 (4th Cir. 2005). While an administrative expense "must be paid in cash on the effective date of the plan" under 11 U.S.C. § 1129(a)(9)(A), "bankruptcy courts have wide latitude in deciding whether to order payment prior to these deadlines," and "once a claimant has requested payment, the court may exercise its discretion whether circumstances warrant immediate response." *Id.* at 242.

(Br. at 9.) The debtor fully concurs. (Resp. at 3, ¶ 8.)

Circumstances can fetter discretion. Although not dispositive, simple fairness is often a good starting point. A wrinkle, however, in this analysis is the conundrum created when the debtor did tender full payment, Sodco delayed presentment, the parties settled possession, and the debtor stopped payment on the checks rendering presentment thereafter unavailing. These circumstances compel the conclusion that Sodco, in declining immediate presentment of the tendered funds for reasons peculiar to its concerns, voluntarily relegated its claim to a reduced status of an administrative claim to be paid in the ordinary course.

To elaborate, this case represents the interplay between two code sections, 503(a) and 365(d)(3), which are complementary, but upon scrutiny reflect two separate compensatory schemes: one having priority and the other being both an independent basis for recompense as well as the default alternative when priority under section 365(d)(3) is not respected.

Specifically, section 503 provides:

---

[1] Sodco was not aware when it filed its Brief that the debtor would concede the administrative expense issue.

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate [.]

11 U.S.C. § 503(a),(b) (2026). The underlying and self-evident presumption in this section is that priority is afforded to parties that provide post-petition products and services that preserve the debtor's estate as it attempts to formulate a plan and reorganize. This is one vehicle for recompense with commensurate priority under section 507.

The Code affords *another* vehicle for recompense and priority in a narrowly defined instance. Specifically, section 365(d) concerns unexpired leases post-petition—such as we had for a brief period between Sodco and the debtor—and provides:

> (3) The trustee shall *timely* perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1)* of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. . . . *Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.*

11 U.S.C. § 365(d)(3) (2026) (emphasis added). Section 365(d)(3) represents an unequivocal statutory obligation unconstrained by a need to seek recompense as an administrative expense. Payments are remitted in the ordinary course, are for reciprocal benefits received post-petition, and do not constitute a waiver or relinquishment of the lessor's rights.

Once bankruptcy is filed, the Code takes over and, on occasion, disrupts, supplements, expands, or constrains the law as it relates to relationships between parties. Section 365 is an example. It takes over the relationship between landlords and tenants under unexpired leases and

provides that the debtor must timely and on an ongoing basis pay rent during that post-petition period for use up to assumption or rejection.

While these two sections represent separate bases for recompense, they are frequently conflated in published opinions because the distinction is irrelevant when the lessee makes payments on an ongoing and timely manner as required by section 365(d)(3). Section 503 only becomes relevant when payments are not made, and the landlord seeks an alternative basis for recompense. There, the landlord is relieved of the "actual, necessary" analysis required in a stand-alone effort to seek payment as an administrative expense under section 503. 11 U.S.C. § 503(b)(1)(A) (2026). Courts recognize the stand-alone benefits of section 365 as well as the frequent reliance on section 503 in the alternative. In *Burival*, the court states:

> By providing for timely performance of all lease obligations during the post-petition, pre-rejection period ***notwithstanding*** Section 503(b)(1), the statute has already granted priority payment status to such obligations and eliminated the need for the landlord to prove any benefit to the bankruptcy estate to obtain such elevated status. A debtor's failure to comply with this duty should not justify denying the landlord the priority treatment bestowed upon such claims by Section 365(d)(3). To hold otherwise would reward a debtor's disobedience of a statutory mandate at the expense of the landlord. The granting of priority status to the landlord's unpaid post-petition, pre-rejection lease claims is the only result consistent with the mandate of Section 365(d)(3).

*Burival v. Creditor Comm.*, *Comm. of Unsecured Creditors & Roehrich, et al* (*In re Burival*), 406 B.R. 548, 554-55 (B.A.P. 8th Cir. June 4, 2009) (internal citations omitted). The duty to perform imposed by section 365(d)(3) carves out a special exception for nonresidential real property leases. Under section 365(d)(3), the lessee of an unexpired lease of nonresidential real property must pay rent as an obligation under the lease during the post-petition, pre-rejection period." *In re Brewer*, 233 B.R. 825, 828 (Bankr. E.D. Ark. 1999).

Referencing *Burival*, the court in *In re Specialty Retail Shops Holding Corp., et al* held:

> The debtors appealed to the Eighth Circuit Court of Appeals which affirmed the B.A.P., holding that: "Section 365(d)(3) is unambiguous and requires payment, in full, of post-petition, pre-rejection rent obligations in unexpired leases of nonresidential real property." As such, the Eighth Circuit Court of Appeals adopted a "billing date" approach, rejecting a proration theory, and ruled that the landlord was entitled to the full amount of the rent payment as an administrative expense under § 365(d)(3).
>
> *Burival* is part of the majority approach to the treatment of administrative claims for unpaid rent.
>
>> By imposing [the § 365(d)(3) requirement of timely performance of all lease obligations], and by explicitly providing that the obligation exists notwithstanding section 503(b)(1), Congress intended to abrogate the general "actual, necessary" requirement of section 503(b)(1). The more specific requirement of section 365(d)(3) is considered to override the more general requirement of section 503(b)(1). To hold otherwise, the majority view notes, would be to reward trustees for violating their duty to pay rent and would be contrary to the language and intent of section 365(d)(3).
>
> In other words, if an administrative expense is established under § 365(d)(3), it preempts § 503(b)(1) and the claimant need not *also* establish actual, necessary costs of preserving the estate.

*In re Specialty Retail Shops Holding Corp., et al,* No. BK19-80064, 2019 WL 4023817, at *3 (Bankr. D. Neb. Aug. 26, 2019) (internal citations omitted).

Thus, it is only when payments are not timely received per section 365(d)(3) that the claimant resorts to another vehicle, that of an administrative expense under section 503(b)(1), for recompense. While often conflated, priority under section 365(d)(3) is independent of section 503(b)(1), requires ongoing and timely payments before and without a plan of reorganization, and only defaults to an administrative claim without necessity of an "actual, necessary" analysis when noncompliance with section 365(d)(3) occurs.

Hence, the conundrum presented in this case. Here, the debtor did comply with the expressed statutory obligation to tender post-petition rent payments per section 365(d)(3), which, presumably, the landlord could have presented without waiver of its rights as provided for in the

Code. Sodco, however, declined presentment until after the stay was lifted by agreement and after the debtor stopped payment on the checks.

While not entirely cricket, the debtor's stop payment order simply withdrew the unaccepted tender; whether that forms the basis for remedies other than administrative expense status, including dismissal or conversion, is not before the court. Equally, refusing to present and enjoy its statutory priority for legal reasons unique to its circumstances is not entirely according to Hoyle and results in the relegation of Sodco's claim to an administrative expense payable in the ordinary course of the debtor's Chapter 11 bankruptcy.

## V. Conclusion

For the reasons stated herein, the Motion is granted in part and denied in part. The sum of $20,200 is an administrative expense owed Sodco that the debtor shall pay in the ordinary course of its Chapter 11 reorganization and plan. The court shall enter a separate judgment to this effect.

IT IS SO ORDERED.

Dated this 9th day of November, 2026.

HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Marc Honey
Jordan Alexandra Honey
Kelly W. McNulty
Beverly I. Brister
United States Trustee